PECKHAM *et al. v.* DUTCHESS COUNTY R. Co.

(*Supreme Court, General Term, Second Department.* July 22, 1892.)

RAILROAD COMPANIES—FENCES—FARM CROSSINGS.

Laws N. Y. 1850 provide that railroad companies "shall erect and maintain fences on the sides of their roads, * * * with openings or gates or bars therein, and farm crossings of the road, for the use of the proprietors." Laws 1854, c. 282, omits the express requirement that there shall be farm crossings, but provides that openings shall be placed at "farm crossings;" and Laws 1890, c. 565, a compilation of existing laws on the same subject, contained substantially the same provision. *Held,* that the provision for crossings was not repealed by such omission, and that railroads are bound to maintain farm crossings.

Appeal from special term, Dutchess county.

Action by Mary A. Peckham and another against the Dutchess County Railroad Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

M. A. Fowler, for appellant.  Herrick & Losey, for respondents.

CULLEN, J.  This action is brought to compel the defendant to construct a farm crossing over its road.  The court at special term decreed the construction of the crossing asked for.  The testimony given on the trial is not presented on this appeal, and the sole question before us is that of the power under the present law to grant the relief sought.  It is settled by authority that, under section 44 of the general railroad act of 1850, it was the duty of a railroad company to construct proper crossings, and that such duty could be enforced by an equitable action.  Wademan v. Railroad Co., 51 N. Y. 568; Jones v. Seligman, 81 N. Y. 190.  But in 1890 the railroad laws were codified, and the defendant condemned its right of way over the plaintiffs' land subsequent to the period when the law of 1890 took effect.  The claim is now made that, by the statute of 1890, railroad companies are under no obligation to give the owners of farms intersected by their road any crossing.  Section 44 of the act of 1850 reads: "Every corporation formed under this act shall erect and maintain fences on the sides of their roads, of the height and strength of a division fence required by law, with openings or gates or bars therein, and farm crossings of the road for the use of the proprietors of the lands adjoining such railroads."  By section 32 of the act of 1890, "every railroad corporation * * * shall maintain fences * * * with openings or gates or bars therein at the farm crossings for the use of the owners and occupants of the adjoining lands."  It is claimed that this change of language must be interpreted to work a change in the law, and that, by the section as it now stands, no duty is imposed to maintain crossings, but only to maintain openings, whereby, by consent or privilege of the company, crossings may be permitted.  We think not.  The language used in the present act is not new.  In section 8, c. 282, Laws 1854, substantially the same provision as to fencing at farm crossings is found.  Thus, previous to the Revision of 1890, there were two enactments on the same subject,—that of 1850 and that of 1854.  In compiling the statutes on the subject, these separate provisions were consolidated, and the language of the later act used.  We think, therefore, that no argument can be drawn from the change of phraseology.  Apart from this consideration, we think it plain that the statute, by directing openings to be placed at farm crossings, recognizes and grants the right to such crossings to the same extent as if in express terms it had ordered their construction.  From the earliest time of railroads in this state such crossings have been made.  Even in the case of a private grant, if there be no other way for the grantor to obtain access to his remaining lands, the reservation of a way of necessity will be presumed.  But such severance of lands in ordinary sales are rare.  But railroads for the greater part of their route sever farms and tracts over which they pass, leaving no access to the severed portions, save across the railroads.  To hold that there was no right of crossings in such cases would render the severed land often valueless, and compel the railroad company to pay excessive and unnecessary damages.  No evil has occurred in practice from the existence of these crossings.  To attribute to the legislature an intent to reverse the whole policy of the state on this subject, and in the future to prevent such crossings, and compel large tracts of land to remain comparatively useless, would be unwarrantable.  We think that there is nothing in the statutes that forces us to such a conclusion.

·  The judgment appealed from should be affirmed, with costs.